Tommy McINTOSH, Charles Marvin Hayes, and Maurice Crawford *v.* STATE of Arkansas

CR 88-10                                                     753 S.W.2d 273

Supreme Court of Arkansas
Opinion delivered July 11, 1988
[Rehearing denied September 12, 1988.]

*John Wesley Hall, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. The appellants, who were in a rented van, were stopped by a state trooper near Ozark, Arkansas, for speeding. The trooper became suspicious and asked them if he could search the van. The driver and one other agreed, and the trooper found two kilograms of cocaine worth approximately $250,000. The appellants were convicted of possession of a controlled substance with the intent to deliver. Maurice Crawford received 40 years in prison and a $100,000 fine; Charles Hayes received 40 years in prison and a $50,000 fine; and Tommy McIntosh received 50 years in prison and a $250,000 fine.

The main issue on appeal is whether the search of the van was based on the valid consent of two of the appellants. The trial judge ruled that the search was valid and upon examining the record, we agree. We also conclude there was substantial evidence to support the convictions of all three appellants. No error requiring reversal was committed when an officer testified that the appellants made no comment when asked whether they had been to California. We find no basis to address the question of ineffective assistance of counsel, which is raised for the first time on appeal.

We state the facts in a light most favorable to the appellee which is the practice on appellate review. *Russell* v. *State*, 295 Ark. 619, 751 S.W.2d 334 (1988). A state trooper, David Hyden, clocked the appellants' van at 80 m.p.h. on the interstate near Ozark, Arkansas, on February 8, 1987. He pulled the van over. The driver was Tommy McIntosh, who was asked to accompany the officer to the police car. Hyden noticed that the mileage on the van's odometer was approximately 5,000. McIntosh gave Hyden his driver's license and a rental agreement as evidence of registration which reflected that the van had been leased in Little Rock four days earlier and the mileage was 1,500 miles. Hyden asked McIntosh about the mileage, and McIntosh told him there must be some mistake because they had only driven to Oklahoma City to see some friends. Hyden testified that McIntosh was extremely nervous. Because of McIntosh's nervousness and the discrepancy in the mileage, Officer Hyden asked

for permission to search the van. McIntosh agreed and signed a consent form. McIntosh pointed out that Crawford had actually rented the van and perhaps he should also consent. According to Hyden, Crawford was called to the police car and asked if he would consent to a search, which he did. Hayes, who was in the back seat lying down, was not asked. During the search the officer found two kilograms of cocaine wrapped in light brown plastic tape in two separate packages. Eight thousand dollars in eight packets of $1,000 each, $29 in one dollar bills and two guns were found.

The appellants were taken to police headquarters and questioned further. They told conflicting stories about their visit to Oklahoma. A further search of the van produced receipts for merchandise purchased in California and motel receipts from California.

At the trial the appellants all testified that they had taken a four day vacation to California. McIntosh said one of the reasons for the trip was to purchase a certain type of tennis shoe which was not available locally. They also said they planned to do some shopping and see some girls.

We address the search question first. The appellants argue that the consent of both McIntosh and Crawford was invalid, first because it was either expressly or impliedly coerced, and second because it was not based on a reasonable suspicion. We have held that "[t]he state has the burden of proving by clear and positive testimony that consent to a search was freely and voluntarily given and that there was no actual or implied duress or coercion." *Scroggins* v. *State*, 268 Ark. 261, 595 S.W.2d 219 (1980). We look at the totality of the circumstances in determining whether a consent is voluntary. *Schneckloth* v. *Bustamonte*, 412 U.S. 217 (1973). There were no coercive circumstances present, express or implied, in this case. A single officer asked the driver and the person listed on the rental agreement as the driver to consent and they readily did so. The court may also take into consideration whether a defendant knew he had the right to refuse consent in determining voluntariness although it is not a conclusive factor. *Schneckloth* v. *Bustamonte, supra.* In the present case the consent form contained the statement, "I have been informed by the above named State Police that I may refuse

to consent to any search and that I may revoke my consent at any time." Considering the totality of the circumstances, we cannot say the trial judge was clearly wrong nor was the decision contrary to the law.

■ The appellants argue that the consent was not valid because it was not based on reasonable suspicion that there was contraband or the presence of criminal evidence. The appellants rely on language in *Garrett* v. *Goodwin*, 569 F. Supp. 106 (E.D. Ark. 1982), and a proposed opinion issued by a federal magistrate to the local district federal court. The *Garrett* case is limited to roadblocks conducted by the Arkansas State Police and for obvious reasons, we would never use a proposed order as precedent. More importantly, the appellants' argument has never been declared to be the law by the United States Supreme Court. Under existing law, this search was valid. Automobiles have a diminished expectation of privacy. *United States* v. *Chadwick*, 433 U.S. 1 (1977). The initial stop, which is always critical in search cases, was legal—for a speeding violation. *See Russell* v. *State, supra*. The trial judge held the consent to search was valid and voluntarily given.

In *Schneckloth* v. *Bustamonte, supra*, the United States Supreme Court observed:

> The circumstances that prompt the initial request to search may develop quickly or be a logical extension of investigative police questioning. The police may seek to investigate further suspicious circumstances or to follow up leads developed in questioning persons at the scene of a crime.

Several other peripheral arguments are made regarding the search, but we conclude that the trial court's decision on this issue was not wrong.

The appellants argue that the trial court erred in denying a mistrial when a police officer, testifying, commented on the appellants' failure to answer a question. Officer Best testified as follows:

> Q. Now, he (Crawford) told you that he had not been to California. Did you show him some of the California receipts, that the jury's seen, or ask him about them?

A. Not during the interview.

Q. Okay.

A. Not at this particular time.

Q. What about the other subjects?

A. They were all three seated in Sergeant Taylor's office after the individual interviews had been conducted, at which time I confronted him as to whether or not they had been in California, that we had received or obtained the motel receipts from the floor of the vehicle, and all three made no comment.

An immediate objection was made by the appellants' attorney and the following discussion took place during a side bar conference:

Mr. Massie: Your honor, it's one thing if they're talking about—if they're talking about a statement that they made. It's another thing if they exercise any right not to comment. Now, I think that was improper, as such, and I ask the court for a mistrial and also, in furtherance, that we not give them thing where they exercised their rights in not making any comment, because they're exercising their right to remain silent. In terms of he's saying they made no comment is one thing that they said, something in response to.

The Court: I don't think it's grounds for a mistrial. I will instruct the jury that the testimony —

Mr. Massie: I don't think the court needs to call that attention to it, but I ask that the court acknowledge the prosecutor not to elicit anything in terms of their response to in the future; otherwise, I think a request for a mistrial, if it is done a second time, ought to be granted, once the prosecutor is put on notice of that particular matter.

Mr. Fields: I think the Defense's request is reasonable and I will not get into that.

The Court: All right, sir.

In a recent United States Supreme Court case, *Greer* v.

*Miller*, ___ U.S. ___, 107 S. Ct. 3102 (1987), a similar situation arose. The prosecutor asked the appellant when he testified, "Why didn't you tell this story to anybody when you got arrested?" An immediate objection and motion for mistrial was made. The trial judge stopped further inquiry but denied the mistrial. The error in the present case is even less apparent than the one made in *Greer*. Here it was not the prosecutor who referred to the appellants' silence but a police officer who gave an unsolicited response. The trial judge did not allow nor did the prosecutor attempt to use the appellants' silence for impeachment purposes or call attention to their silence. *See Doyle* v. *Ohio*, 426 U.S. 610 (1976).

We have held that a "mistrial is an exceptional remedy to be used only where any possible prejudice cannot be removed by an admonition to the jury." *Free* v. *State*, 293 Ark. 65, 732 S.W.2d 452 (1987). Although the trial judge offered to give an admonitory instruction to the jury, the appellants refused the offer. This case is somewhat similar to *Wheat* v. *State*, 295 Ark. 178, 747 S.W.2d 112 (1988), where the trial court refused a mistrial when a police officer, in explaining a photographic lineup, spoke of "mugshots" being pulled from the police files. In *Wheat* the appellant also failed to ask for an admonition. We cannot say the trial court was wrong in this case to deny a mistrial. *See Greer* v. *Miller*, *supra*.

It is argued that the trial court was wrong in denying motions for a directed verdict on behalf of McIntosh and Hayes since there was no substantial evidence to support their convictions. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Glick* v. *State*, 275 Ark. 34, 627 S.W.2d 14 (1982).

The cocaine was found wrapped in tape inside a shopping bag which had Crawford's fingerprints on it. Both Hayes and McIntosh told the officer that they had pistols in the van. (The two guns were not illegal weapons.) All three appellants denied being in California. However, Officer Best found motel receipts in the van from a motel in Monrovia, California. They were in Hayes's name. All three appellants gave the officers conflicting stories as to where they had been. Officer Hyden testified that McIntosh told him that he had been to Oklahoma

174

City to see some friends; Officer Best testified that Hayes told him they had been to Ardmore, Oklahoma, to visit his girlfriend, but he was unable to give the police her address or phone number; Best also testified that Crawford told him they had gone to Oklahoma to attend a funeral, but he could not tell him the person's name or where the funeral had been held. During the trial all three testified that they had gone to California to vacation, shop, and see some girls. The van was rented on February 4, 1987, and driven to California and back by February 8, 1987. The jury could conclude this journey was not what the appellants contended, a shopping trip to California, but rather simply a drug run which all three knew about, participated in and should be held accountable for.

The appellants raise the issue of ineffective assistance of counsel for the first time on appeal, contending that their attorney had an obvious conflict of interest in representing all three. It is argued that we can conclude this fact from the record without the issue being raised below. The appellants cite *Glasser v. United States*, 315 U.S. 60 (1941), and *Holloway v. Arkansas*, 435 U.S. 475 (1978), as authority. However, in both *Glasser* and *Holloway* the issue was raised below. We can make no such conclusion from the record, and we have held that ineffective assistance of counsel cannot be raised for the first time on appeal.

Affirmed.