Boyd T. HULS *v.* STATE of Arkansas

CA CR 88-212 770 S.W.2d 160

Court of Appeals of Arkansas
Division II
Opinion delivered May 3, 1989
[Rehearing denied May 24, 1989.]

*John Wesley Hall, Jr.* and *Craig Lambert*, for appellant.

*Steve Clark*, Att'y Gen., by: *Tim Humphries*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. The appellant, Boyd T. Huls, appeals his conviction of second degree murder for which he received a sentence of twenty years in the Arkansas Department of Correction. On appeal, he raises three points for reversal: (1) the trial court erred in admitting hearsay statements of the victim, Pasha Williams, made to her dentist, Dr. Allen Windberry; (2) the trial court erred in admitting into evidence photographs of the victim taken at her autopsy; and (3) the trial court erred in denying appellant's motion to suppress evidence found in a search of his residence. We disagree and affirm.

The appellant was charged with second degree murder, a class B felony, pursuant to Ark. Code Ann. § 5-10-103(a)(2), in connection with the death of Pasha Williams, which occurred early on the morning of December 10, 1986. The appellant contends that it was error for the court to have allowed Dr. Allen Windberry's testimony regarding certain statements that were made to him by Ms. Williams during a visit to his office on the basis that the testimony was hearsay. At trial, Dr. Windberry, Ms. Williams' dentist, testified that he had treated Ms. Williams

in May of 1986 for some missing and cracked teeth, which required bridgework to be done. He further testified that upon inquiry, Ms. Williams told him that this injury was caused by appellant's having thrown a lamp at her.

At a conference held on the morning of trial, appellant's counsel made an oral motion in limine with reference to and request for the exclusion of Dr. Windberry's testimony regarding the "broken teeth and the history he apparently took from the patient." The trial court denied the motion, finding that the testimony would be admissible as an exception to the hearsay rule as a statement made for the purposes of medical diagnosis or treatment.

The statement with regard to the appellant's having inflicted this injury was hearsay, in that it was offered for the truth of the matter asserted, as indicated by the prosecution's argument at trial that the testimony was relevant to show intent, motive and lack of mistake or accident. *See* Ark. R. Evid. 404(b). On appeal, the state does not argue that the statement was not hearsay, but that it was otherwise admissible pursuant to an exception to the hearsay rule. The state argues either that the statement falls into the exception noted by the trial court which is found at Ark. R. Evid. 803(4), or that it qualifies as an excited utterance pursuant to Rule 803(2). We conclude, however, that the statement falls into neither exception. Nevertheless, we affirm because of appellant's failure to make an appropriate and timely objection to the testimony at the time it was offered.

 Ark. R. Evid. 803(4) provides that statements made for the purposes of medical diagnosis or treatment and describing medical history or past or present symptoms, pain or sensation, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to diagnosis or treatment, are not excluded by the hearsay rule, even though the declarant is available as a witness. As stated in *United States* v. *Renville*, 779 F.2d 430 (8th Cir. 1985), the crucial question under the rule is whether the out-of-court statement of the declarant was "reasonably pertinent" to diagnosis or treatment. The Eighth Circuit in *United States* v. *Iron Steel*, 633 F.2d 77 (8th Cir. 1980), promulgated a two-part test for the admissibility of hearsay statements under this exception: (1) the declarant's motive in

making the statement must be consistent with the purposes of promoting treatment; and (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis. In *Renville*, the court stated:

> Statements of identity seldom are made to promote effective treatment; the patient has no sincere desire to frankly account for fault because it is generally irrelevant to an anticipated course of treatment. Additionally, physicians rarely have any reason to rely on statements of identity in treating or diagnosing a patient. The statements are simply irrelevant in the calculus of devising a program of effective treatment.

*United States* v. *Renville*, 779 F.2d at 436. *See also, Stallnacker* v. *State*, 19 Ark. App. 9, 715 S.W.2d 883 (1986). Inasmuch as the statement in the present case identified the appellant as the source of the declarant's injury, we are persuaded by the reasoning in *Iron Steel, supra,* and *Renville, supra*, and conclude that the testimony was not admissible pursuant to this exception.

■ Nor can we conclude, based on the record before us, that the statement was admissible as an excited utterance. An excited utterance is defined as a statement relating to a startling event or condition made while the declarant was under the stress and excitement caused by the event or condition. Ark. R. Evid. 803(2). The admissibility of a statement as an excited utterance is not to be measured by any precise number of minutes, hours or days, but requires that the declarant is still under the stress and excitement caused by the traumatic occurrence. *Pennington* v. *State*, 24 Ark. App. 70, 749 S.W.2d 680 (1988). The record is devoid of any testimony tending to show that the declarant, Ms. Williams, was still under the influence of stress or excitement associated with the startling event when the statement was made. In the absence of such evidence, we cannot conclude that the statement falls within this exception. In sum, we find that the statement was hearsay and does not fall within the parameters of either Ark. R. Evid. 803(4) or 803(2).

As previously noted, appellant made what can be deemed an oral motion in limine seeking to exclude testimony from Dr. Windberry as to "the broken teeth and the history he took from the patient," Ms. Williams. Given the motion as stated, the trial

judge was correct at this juncture in his ruling that such testimony fell within the hearsay exception as a statement made for the purposes of medical diagnosis or treatment. Absent from the motion, however, was any argument made as to the inadmissibility of statements concerning identity or fault, as excepted from this exception to the hearsay rule. Appellant did not object to the testimony of Dr. Windberry identifying the appellant as the perpetrator of the injury, with the result being that appellant has broadened the scope of his earlier objection on appeal.

It is not necessary for a party to object during trial in order to preserve his pretrial objection, but his failure to object or move to strike the testimony during trial precludes him from relying on anything then disclosed which had not been brought out in the pretrial hearing. *Rowe* v. *State*, 271 Ark. 20, 607 S.W.2d 657 (1980). The trial judge should deny a threshold motion that is vague and indefinite because the motion is properly used to prohibit the mention of some *specific matter*, perhaps of an inflammatory nature, until its admissibility has been shown out of the hearing of the jury. *Smith* v. *State*, 273 Ark. 47, 616 S.W.2d 14 (1981) (emphasis supplied). It has been held that when a motion in limine is overruled, no further objection is needed. *Ward* v. *State*, 272 Ark. 99, 612 S.W.2d 118 (1982). However, as pointed out in the concurring opinion in *Ark. State Hwy. Comm'n* v. *Pulaski Investment Co.*, 272 Ark. 389, 614 S.W.2d 675 (1981), an objection should be renewed when the motion is overly broad or vague, so as to provide the trial judge with an opportunity to determine the admissibility of the specific matter that is introduced. We hold then that appellant's failure to object to this testimony when offered precludes him from asserting its admission as error on appeal.

At trial, through the testimony of Dr. Fahmy Malak, the state medical examiner, ten photographs of the victim were admitted into evidence. The appellant next argues that four of these photographs should not have been admitted on the grounds that these photographs were not relevant and were highly prejudicial. Of the four photographs in question, two portrayed Ms. Williams' exposed scalp, one showed her exposed rib cage, and the other was of her lip.

The admissibility of photographs is within the sound

discretion of the trial judge, and his decision will not be reversed absent an abuse of that discretion. *Watson* v. *State*, 290 Ark. 484, 720 S.W.2d 310 (1986). The fact that photographs are inflammatory is not sufficient reason alone to exclude them. Inflammatory photographs are admissible in the discretion of the trial judge if they tend to shed light on any issue, enable a witness to better describe the objects portrayed, permit the jury to better understand the testimony, or corroborate testimony. *Id*. Where the prejudice substantially outweighs the probative value of the photographs, it is error for the trial judge to admit them. *Berry* v. *State*, 290 Ark. 223, 718 S.W.2d 447 (1986). In *Berry*, the supreme court expressed the view that trial courts should not engage in carte blanche acceptance of graphic and repetitive pictures into evidence.

In the instant case, upon the request of appellant's counsel, the trial judge, counsel and Dr. Malak retired to chambers before the introduction of any photographs to discuss their admissibility. Dr. Malak briefly explained what the substance of his testimony would be in relation to each of the photographs or the purpose for which each of the photographs would be offered. Although two photographs of the victim's scalp were withdrawn by the state as being cumulative, the trial judge found that the remaining photographs were admissible. In making this determination, it is clear from the record that the trial judge specifically addressed the probative value of the photographs as opposed to the potential for prejudice.

The appellant was charged with second degree murder pursuant to Ark. Code Ann. § 5-10-103(a)(2). The state had the burden of proving that appellant knowingly caused the death of another person under circumstances manifesting an extreme indifference to the value of human life. Dr. Malak testified that the cause of death was a blunt trauma to the head and neck. He stated that the two photographs of the scalp were helpful in illustrating the injury to the head, and that the photographs of the rib cage and lip showed further the extent of her injuries. In addition, as the state points out, the photograph of the lip was also offered to rebut the appellant's contention that Ms. Williams' death was attributable to the negligent use of a laryngoscope, which was used in an effort to revive her at the hospital. Dr. Malak testified that the injury to the lip depicted in the photograph was a

result of a direct blow to the lip, and could not have been caused by a laryngoscope. We cannot say that the trial court abused its discretion in admitting these photographs.

As appellant's final point, he argues that the trial court erred in denying his motion to suppress evidence obtained in a search of his residence conducted at 7:00 a.m. the morning of December 10, 1986. The record reflects that Deputy Sheriff Paul Martin was called at approximately 4:45 a.m. the morning of December 10th to come to the hospital where Ms. Williams had been taken by the appellant. Officer Martin testified that he accompanied the appellant back to his home without objection, where he conducted a search of the house in which he confiscated a hammer and a blood-stained blanket, which he also photographed. Officer Martin related that the appellant cooperated with him in the investigation of the house and that the appellant allowed the search to take place. With regard to this search, the appellant testified that "he (Officer Martin) said that he was going to look through the house and I agreed." The trial court found that the appellant voluntarily consented to this search, and denied the motion to suppress.

In reviewing the trial court's ruling with respect to a motion to suppress, the appellate court makes an independent determination based on the totality of the circumstances, and reverses only if the ruling was clearly against the preponderance of the evidence. *Campbell* v. *State*, 294 Ark. 639, 746 S.W.2d 37 (1988). The state has the burden of proving by clear and positive testimony that the consent to search was freely and voluntarily given, and that there was no actual or implied duress or coercion. *McIntosh* v. *State*, 296 Ark. 167, 753 S.W.2d 273 (1988). We cannot say that the trial court's denial of the motion to suppress, upon its finding that the appellant freely and voluntarily consented to the search, is clearly erroneous.

AFFIRMED.

MAYFIELD and JENNINGS, JJ., agree.