**Boyd HULS, Appellant,**

v.

**A.L. LOCKHART, Appellee.**

**No. 91–1791.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1991.

Decided Feb. 27, 1992.

of habeas corpus filed pursuant to 28 U.S.C. § 2254. We affirm.

## I.

Huls was convicted by a jury in Fulton County, Arkansas, of murder in the second degree. The conviction was affirmed on appeal. *Huls v. State*, 27 Ark.App. 242, 770 S.W.2d 160 (1989). Huls' petition for post-conviction relief, alleging ineffective assistance of trial counsel, was denied. *Huls v. State*, 301 Ark. 572, 785 S.W.2d 467 (1990).

Having exhausted his state remedies, Huls brought this habeas action, alleging ineffective assistance of counsel at his trial. An evidentiary hearing was held before a magistrate judge.[2]

The jury for Huls' trial was selected on January 6, 1988. Due to an extended period of inclement weather, however, the trial did not begin until February 22, 1988. Defense counsel failed to object to the composition of the jury, and the trial proceeded. Because of this forty-six day delay, and because the trial was highly publicized, the magistrate judge submitted recommended findings to the effect that 1) the trial court failed to take adequate steps to insure that the jury's impartiality had not been compromised; and 2) trial counsel were ineffective for failing to object to the commencement of the trial under such circumstances.

The district court declined to adopt these recommended findings. The district court held that 1) the trial court took reasonable steps to insure that the jury was comprised of impartial persons; and 2) the decision of defense counsel to proceed with the trial notwithstanding the delay was strategic or tactical. The district court adopted the magistrate judge's recommendation to reject Huls' remaining arguments and dismissed Huls' habeas petition.

Walter Craig Lambert, Little Rock, Ark., argued (John Wesley Hall, Jr., and Craig Lambert, on brief), for appellant.

Kelly K. Hill, Little Rock, Ark., argued (Winston Bryant, Kelly K. Hill, on brief), for appellee.

Before LAY,* Chief Judge, WOLLMAN, Circuit Judge, and HANSEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Boyd T. Huls appeals from the district court's[1] order denying his petition for writ

---

* The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas.

2. The Honorable John L. Forster, United States Magistrate Judge for the Eastern District of Arkansas.

On appeal, Huls argues that defense counsel were ineffective because they failed to 1) seek a change of venue due to pre-trial publicity; 2) object to the composition of the jury due to the pre-trial publicity and the forty-six day delay; 3) properly preserve the issue of the admissibility of certain hearsay testimony; 4) present expert testimony as to the victim's cause of death; and 5) call character witnesses to testify in Huls' behalf.

## II.

■ To prevail on his claim of ineffective assistance of counsel, Huls must show that the performance of his defense counsel fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Huls must further demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

As we review the adequacy of defense counsel's performance, we note that:

it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

*Id.* at 689, 104 S.Ct. at 2065 (citation omitted). In short, "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.*, and we will not second-guess an attorney's trial strategy. *Johnson v. Lockhart*, 921 F.2d 796, 799 (8th Cir.1991).

■ A claim of ineffective assistance presents a mixed question of law and fact. We review the district court's factual findings for clear error and its legal conclusions de novo. *Chandler v. Armontrout*, 940 F.2d 363, 365 (8th Cir.1991).

## III.

■ We address first Huls' claim that defense counsel were ineffective because they failed to seek a change of venue due to the pre-trial publicity.

Two of the three members of the defense team, Carmack Sullivan and Larry Kissee, had close ties to the county in which Huls was tried. The final member of the defense team, Wayne Emmons, was less familiar with Fulton County. At the hearing before the magistrate, Emmons testified that he had argued with Sullivan for a change of venue and that Sullivan had prevailed. Emmons testified that:

[Sullivan's] rationale [for not seeking a venue change] was that he knew the people in that county. [Sullivan] had tried—he said he had some of his greatest successes in that county. [Sullivan] had been prosecuting attorney in that county. [Sullivan] always liked juries in that county, but a great many of the jurors from the jury pool ... would come from Cherokee Village who were also from states north of the Mason–Dixon line, which [sic] Boyd [Huls] was from, and would conceivably not have an Ozark Mountain southern prejudice against Boyd that some of the local people would, and he wanted to try it in that county.

Transcript of Federal Evidentiary Hearing (Fed. Transcript) at 107. In addition, Emmons testified that the defense team had

a marvelous dossier on every potential juror insofar as where they worked and who they were kin to and what their politics was [sic].... [It] was Mr. Sullivan's decision [not to seek a venue change]. He made it not just randomly or upon a whim, but based on the information.

*Id.* at 107–08. Thus, defense counsel considered their familiarity with the county, its citizens, and the particular jurors, and the

possibility of reduced prejudices in deciding not to seek a change of venue.

We have "repeatedly warned against secondguessing a lawyer's trial strategy in evaluating claims of ineffective assistance of counsel." *Johnson*, 921 F.2d at 799; *Laws v. Armontrout*, 863 F.2d 1377, 1393–94 (8th Cir.1988), *cert. denied*, 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989); *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir.1987). As defense counsel's decision was "within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, we hold that defense counsel were not ineffective for failing to seek a change of venue in this case.

■ We next address Huls' claim that defense counsel were ineffective because they should have objected to the composition of the jury in light of the pre-trial publicity and the forty-six day delay between jury selection and trial, and that the trial court failed to take adequate steps to insure an impartial jury.

As to the failure to object to the jury, the record reflects that defense counsel indeed discussed moving for a mistrial due to the long delay and the possibility that the jury had been exposed to the pre-trial publicity. Regarding the delay question, Emmons testified:

> Mr. Sullivan and Mr. Kissee felt like the people they actually had on that jury— they had several people that would be strong for Boyd [Huls], and that even though [extrajudicial influence] was a possibility, that that could be handled by additional *voir dire* at the time the trial was to begin, and I believe Judge Kemp did do additional *voir dire* at the time the trial began.

Fed. Transcript at 108. Thus, the two lawyers most familiar with the locality (and presumably most knowledgeable about Huls' chances of success with a local jury) decided not to object to the composition of the jury despite the delay.

Huls argues, however, that the district court erred by labeling defense counsel's failure to object on the delay issue a tactical decision. Rather, he argues, defense counsel's failure to object to the delay was wholly without reason, citing *Riley v. Wyrick*, 712 F.2d 382, 385 (8th Cir.1983). We do not agree, for defense counsel chose to continue with the selected jury for several reasons. They were familiar with the county and the jurors. Indeed, the defense team believed they had already selected a sympathetic jury; that "they had several people that would be strong for Boyd [Huls]." Defense counsel also believed that there would be less potential for local prejudice against Huls because many of the citizens of Cherokee Village, Fulton County, hailed from northern states. The defense team's decision to try their case to a jury with which they felt comfortable, rather than take their chances with a new jury, was therefore not without reason. "While one may disagree with [defense counsel's] theory, [they] clearly had one." *Johnson*, 921 F.2d at 800. In sum, defense counsel's decision was a strategic one, and Huls has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

■ Huls also argues that the trial court failed to take adequate steps to insure that the jury was comprised of impartial persons. We disagree.

In finding that the trial court failed to take adequate steps to insure that the jury had not been compromised during the delay, the magistrate judge cited *United States v. Price*, 573 F.2d 356 (5th Cir.1978), in which the Fifth Circuit articulated a trial court's duty to conduct supplemental *voir dire* when there has been a significant delay between jury selection and trial.

First, we note that defense counsel failed to raise an objection to the jury based upon the delay. Even under the Fifth Circuit precedent, it appears that, in the absence of such an objection, the trial court in this case may have been under no duty to conduct supplemental *voir dire*. *United States v. Capua*, 656 F.2d 1033, 1036 (5th Cir.1981) ("Only such a[n] [objection] triggers the duty of the trial court to conduct

the supplemental *voir dire*."). Second, we note that the trial court did in fact conduct supplemental *voir dire*. Before the trial commenced the trial court addressed the jury.

> At this time then let me inquire of the jury.... [H]as anyone attempted to talk with you about the facts of this case during the time from the time you were selected in January up until today's date? Have any of you read anything in the newspaper or heard anything on the radio or possibly on television that might influence you in any way? And, of course, at the time you were selected, [you were] selected with the purpose that you all would be fair and impartial, be the twelve most fair people.... Is there anything that has developed between January 4th and today's date that would interfere with you sitting fairly and impartially?

State Trial Transcript at 486–87. The magistrate judge found this inquiry to be cursory and inadequate. The inquiry was sufficient, however, for one of the jurors to express concern with regard to his ability to serve as an impartial juror. After an *in camera* discussion with the judge, prosecutor, and defense counsel, the juror was excused. Upon returning to the courtroom, the trial court asked the remaining jurors, "Is there anyone else that has anything to report to the Court?" Upon receiving no response, the trial court seated one of the alternate jurors and proceeded with the trial. Defense counsel were present during the supplemental *voir dire* and, apparently for reasons we have found to be strategic, did not object to the composition of the jury. Accordingly, we agree with the district court's conclusion that the trial court took reasonable steps to insure that the jury was composed of impartial persons.

■ Next, Huls argues that defense counsel were ineffective because they failed to properly preserve for appeal the issue of the inadmissibility of certain hearsay testimony. Defense counsel chose to move *in limine* to have the hearsay evidence excluded, rather than to contemporaneously object during trial. Emmons testi-

fied that 1) he believed a motion *in limine* to be "a much better way of preserving an issue for appeal ... [as] an objection after a question ... poisons the jury;" and 2) he had in the past preserved issues for appeal in this manner. Fed. Transcript at 119. On appeal, the hearsay was found inadmissible; the conviction was affirmed, however, because the appellate court found that the issue had not been properly preserved for appellate review. *See Huls*, 27 Ark.App. 242, 770 S.W.2d 160 (1989). While the court held that the motion *in limine* was so vague that counsel was required to have objected at trial to preserve the error, it noted that "[i]t has been held that when a motion *in limine* is overruled, no further objection is needed." *Id.* 770 S.W.2d at 163 (citation omitted). We note that when defense counsel's strategy "turns out to be wrong or even poorly advised, [in hindsight,] this fact alone cannot support a belated claim of ineffective counsel." *Robinson v. United States*, 448 F.2d 1255, 1256 (8th Cir.1971) (citations omitted). Moreover, the Arkansas Supreme Court, which fully considered this issue, determined that "even if a timely objection at trial could have prevented the ... testimony, the evidence ... does not lead this court to conclude that there was a reasonable probability that the jury would have acquitted [Huls without the hearsay testimony]." *Huls*, 785 S.W.2d at 469. We agree.

■ Huls also contends that defense counsel were ineffective because they failed to present expert testimony as to the victim's cause of death. The magistrate judge found that defense counsel's failure to employ an expert to review the medical examiner's findings and autopsy report fell below an objective standard of reasonableness. The magistrate judge examined this error in light of the totality of the circumstances, *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), and noted that he had before him both the trial testimony and the testimony of Huls' expert:

> While [the expert's] testimony would [have] cast a pall on the methodology

and thoroughness of [the medical examiner], it could have also opened the door for cross-examination and argument by the prosecution on the possibility that [the victim] lost her life through strangulation. Such a conclusion could hardly be helpful to Petitioner.

Addendum to Magistrate's Findings, pg. 5. The magistrate judge concluded that Huls had not shown, to a reasonable probability, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. In light of the potential prejudice from this testimony, which may well have supported the state's theory that the victim had been strangled and beaten to death, we hold that the district court did not err in adopting the proposed finding that Huls had suffered no prejudice as a result of counsel's failure to employ an expert.

Finally, Huls argues that defense counsel were ineffective because they failed to call character witnesses. The magistrate judge found that defense counsel's failure to call these witness was the product of trial strategy. We agree.

Emmons testified that character witnesses are vastly overrated; they are only helpful if they are "dynamite." Defense counsel learned, however, that their best potential witness had allegedly seen Huls smoke marijuana and inject a substance into his body. Fed. Transcript at 103. Fearing that the state might comment on this information during cross examination, defense counsel decided not to call this witness. In short, defense counsel's decision not to call character witnesses was strategic and professionally reasonable.

The judgment of the district court is affirmed.