Frederick Lee KOONCE a/k/a Frederick ROBERTS
*v.* STATE of Arkansas

CR 80-43                                    598 S.W. 2d 741

Supreme Court of Arkansas
Opinion delivered May 27, 1980

*Jack T. Lassiter*, for appellant.

*Steve Clark*, Atty. Gen., by: *Robert J. DeGostin, Jr.*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Chief Justice. Appellant Frederick Lee Koonce, also known as Frederick Roberts, was sentenced to 16 years' imprisonment as a habitual criminal, after having been found guilty of aggravated robbery by a jury. He was also found guilty of unauthorized use of a motor vehicle, as a lesser included offense on the charge of theft of property, and sentenced to imprisonment for one year on that charge. On this appeal, he alleges that the trial court erred in failing to grant his motion to suppress as evidence a .22 caliber weapon seized in the search of the vehicle. He also asserts that the court erred in failing to give an instruction on choice of evils that he had requested.

The weapon was a .22 caliber revolver seized by an officer of the police department of McComb, Mississippi on the date of the alleged robbery in Cabot, Arkansas. Officer Ronald Yoas was on patrol in McComb on the evening of September 2, 1978, when he saw a motor vehicle parked behind a deserted filling station. As he approached the vehicle, he observed two male persons putting oil in the car and drinking beer from a quart bottle and two cans. He asked them for identification. One of these men produced an Indiana driver's license identifying him as Tommy R. Burcham. The other was identified as Lonnie L. Burcham. They were arrested after Officer Yoas requested information from the National Crime Information Center and was told that Tommy Burcham was wanted on a charge in Indiana. Yoas approached the vehicle and observed a man asleep inside it. He awakened this man, who was the appellant, and asked him for identification. Koonce exhibited an insurance or hospital card issued to Jerry Ashley. At the time a driver's license bearing the name Jerry Ashley fell to the floorboard of the vehicle from a wallet in possession of the person in the car. The picture on this license was not that of the person in the vehicle. Officer Yoas observed an open, half-full, quart bottle of beer in the back of the vehicle and noticed the odor of marijuana. The officer placed appellant under arrest for possession of open beer. The officer removed appellant from the vehicle and searched it. He found several knives and a fully loaded Central .22 caliber nine-shot revolver, which was identified as appellant's by Jerry Ashley, the

alleged victim of the robbery, as looking like the revolver that was held on him at the time of the robbery. The weapon was found under the front seat of the automobile on the passenger side.

Lonnie Burcham told Officer Yoas that he and his brother Tommy had bought the car. Tommy Burcham testified at the suppression hearing that the car belonged to him and his brother Lonnie. All three of the persons taken into custody were charged with possession of "open" beer in violation of a McComb city ordinance. One or more of them were charged with possession of marijuana. Koonce testified at the suppression hearing that he claimed no ownership of the car and that to the best of his knowledge it belonged to Lonnie Burcham. He also said that he did not own the pistol.

Since Koonce had neither a property interest nor a possessory one, either in the vehicle in which he was only a backseat passenger or in the weapon seized, he had no legitimate expectation of privacy under the front seat of the vehicle, which would entitle him to invoke the exclusionary rule. *Rakas* v. *Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387, reh. den. 439 U.S. 1122, 99 S. Ct. 1035, 59 L. Ed. 2d 83 (1978). For this reason, we do not consider other arguments pertaining to the reasonableness of the search.

Appellant also contends that the trial court erred in failing to give instructions on the defense of "choice of evils" on each charge against him. This defense is new to Arkansas criminal jurisprudence and seems to be a rather new concept which has not been defined by statute in many jurisdictions. It is included in the defense of justification in our criminal code. Ark. Stat. Ann. § 41-504 (Repl. 1977). That section provides:

Justification — Choice of Evils. — (1) Conduct which would otherwise constitute an offense is justifiable when:
(a) the conduct is necessasry as an emergency measure to avoid an imminent public or private injury; and

(b) the desirability and urgency of avoiding the injury outweigh, according to ordinary standards of reasonableness, the injury sought to be prevented by the law proscribing the conduct.

(2) Justification under this section shall not rest upon considerations pertaining to the morality and advisability of the statute defining the offense charged.

(3) If the actor is reckless or negligent in bringing about the situation requiring a choice of evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability. [Acts 1975, No. 280, § 504, p. 500.]

Appellant requested, and the court refused, AMCI 4102, based upon this section of the statute, on both charges.

We do not think appellant made a showing entitling him to these instructions. Included in the commentary to this section is the following statement:

Illustrative of situations that might permit successful recourse to § 41-504 are: (1) the destruction of buildings or other structures to keep fire from spreading; (2) breaking levees to prevent the flooding of a city, causing, in the process, flooding of an individual's property; and (3) temporary appropriation of another person's vehicle to remove a seriously injured person to a hospital.

The evidence upon which appellant bases his argument that he was entitled to these instructions is as follows:

Mr. Ashley testified that on the night in question Mr. Koonce was with an individual by the name of Tom Burcham and that they came by Ashley's house around 8:00 or 9:00 that evening. Mr. Ashley testified that the three of them sat around his apartment on that Saturday night drinking beer and smoking pot. Mr. Ashley testified that he went to bed at approximately 1:00 in the morning and was awakened by Mr. Koonce tapping

him on the shoulder. He testified that Mr. Koonce told him to lay still and that Mr. Koonce had a .22 revolver in his hand at the time. Ashley testified that Koonce expressed an intention to rob him. According to Ashley, Koonce took his billfold and all the change in his pocket, a small can in the living room, truck keys and a 1978 GMC truck which belonged to Ashley's employer. Ashley stated that approximately $250.00 was taken from him. Mr. Burcham, at Koonce's direction, tied Ashley's hands and Koonce tied his feet. Ashley admitted that he was a convicted felon and on the night in question he had been using marijuana and LSD.

On cross-examination Ashley admitted that he had sold LSD in the past and had procured marijuana for a neighbor. Ashley denied having been "somewhat berserk" on the evening in question, but he admitted to previous LSD use and that the drug is a hallucinogenic. He admitted to smoking 4 or 5 joints of marijuana that evening. On re-direct examination he identified the gun that was held on him as a .22 caliber gun, blue with a long barrel.

In contrast to Mr. Ashley's testimony, the Defendant Frederick Lee Koonce testified as follows: Koonce testified that he had met Ashley two or three days prior to the incident. Mr. Koonce stated that he had bought LSD from Ashley in tablet form at that time. On the evening in question, Mr. Koonce and Mr. Burcham went to Mr. Ashley's home and bought approximately 1 ounce of marijuana and two hits of LSD from Mr. Ashley. They smoked marijuana and drank beer. Mr. Ashley took approximately 3 tablets of LSD. That occurred approximately 1 hour after Mr. Koonce and Mr. Burcham arrived at the apartment. Between the hours of 10:00 p.m. and 1:00 a.m. Mr. Ashley was incoherent and could not be understood. Ashley was unable to get up from his chair. Mr. Koonce testified that Mr. Ashley was unaware of anything until around 3:30 or 4:00 in the morning when he began to discuss a past debt owed to him by Mr. Burcham. That discussion ended in an argument and Mr. Koonce testified that he told Mr.

Ashley that he had tied him up because he was too violent and too emotional to talk and discuss things and so he would not hurt himself or Koonce or Burcham. Koonce testified that he asked Ashley where the keys to his truck were and Ashley told him. Koonce further stated he and Burcham took Ashley's drugs from him because of his condition and told him that they would be back early in the morning and let him have his things. Koonce and Burcham then drove to Burcham's brother's home in the pick-up. They then drove Lonnie Burcham's car back to Ashley's home with the intention of returning Ashley's possessions. Koonce testified that when they arrived they heard arguing and loud voices inside so they left. Mr. Koonce denied pulling a pistol on Mr. Ashley at any time. The truck that was taken from Ashley's residence was left approximately a half block from Mr. Burcham's brother's house and Ashley had been informed where the truck would be left. Koonce testified that he took Ashley's billfold with him when they left for New Orleans because he was afraid to leave it in the pick-up truck on the street. Mr. Koonce denied taking $250.00 from Mr. Ashley.

We readily agree with a New York court [*People* v. *Brown*, 70 Misc. 2d 224, 333 NYS 2d 342 (1972)], that a statute such as this is to be narrowly construed and applied. The seed for this section of our criminal code was furnished by The American Law Institute in Tentative Draft No. 8 of its Model Penal Code (1958). The language of our statute differs to some extent, and is more limiting, but the basic principles of this new defense are similar to those espoused by the institute. In justifying the extension of the defense to offenses other than homicide, in its comments the institute said:

> * * * Property may be destroyed to prevent the spread of a fire. A speed limit may be violated in pursuing a suspected criminal. An ambulance may pass a traffic light. Mountain climbers lost in a storm may take refuge in a house or may appropriate provisions. A cargo may be jettisoned or an embargo violated to preserve the vessel. An alien may violate a curfew order to reach an air raid shelter. A druggist may dispense a drug without

the requisite prescription to alleviate distress in an emergency. A developed legal system must have better ways of dealing with such problems than to refer only to the letter of particular prohibitions, framed without reference to cases of this kind.

In its proposed official draft of the Model Penal Code, the institute made some changes in the language of the section defining the defense, but referred to the tentative draft for commentary.

The evidence here does not bear any similarity whatever to the examples set out in either the commentary to the governing section of our criminal code or to that in the ALI tentative draft. We find the instruction inappropriate to the facts in this case.

The judgment is affirmed.