STATE of Arkansas *v.* Jeffery VILLINES, Gerald Lamont
Cross, and Dennis Lee Miller

CR 90-181                                              801 S.W.2d 29

Supreme Court of Arkansas
Opinion delivered December 17, 1990

*Steve Clark*, Att'y Gen., by: *Ann Purvis*, Asst. Att'y Gen., for appellant.

*Greene Law Offices*, by: *Robert E. Adcock*, for appellee.

ROBERT H. DUDLEY, Justice. The three defendants in this case were jointly charged with possession of marijuana with intent to deliver. They filed a motion to suppress seized evidence because of a warrantless search and seizure. *See* A.R.Cr.P. Rule 16.2. The trial court granted the motion to suppress. The State filed this interlocutory appeal contesting the trial court's ruling pursuant to A.R.Cr.P. Rule 36.10(a) and (c). The trial court ruled correctly. Under the rule providing for an interlocutory appeal by the State, further proceedings against the defendants on this charge are now barred. A.R.Cr.P. Rule 36.10(d).

The three defendants planned to drive from Dallas to Milwaukee in defendant Cross's car. They were to share the driving duties. On the morning they left Dallas, defendants Villines and Miller placed their baggage in the trunk of the car. Defendant Villines drove to a rest area off Interstate 30 just south of Little Rock. At that point defendant Miller began driving. The highway had ice on it. Miller drove to a point near the Geyer Springs exit of Interstate 30 in Little Rock. There, the car slid and hit a concrete median barrier in the center of the highway. The car was heavily damaged and defendant Villines went to get a wrecker.

A state trooper was dispatched to the wreck. When he first got there, no one was in the car, but Cross and Miller immediately walked up, and the trooper began talking to them. Soon Villines

arrived with the wrecker. Villines got in the car, started it and moved it enough for it to be hooked to the wrecker. The trooper began to examine the car for damage. As he did, he noticed what appeared to be a marijuana cigarette butt and marijuana seeds on the left front floorboard. He felt and smelled the butt and was fairly certain it was marijuana. The trooper testified that he did not arrest the defendants, but did place them in the back of his patrol car. He thought they were "nervous and jittery," but attributed that to the fact they had just been involved in a wreck. He did not ask Cross for permission to search his car. He told the three of them that he had probable cause and was going to search the car. Miller began crying and said he had never done anything like that before. The trooper tried to open the trunk but, because of the damage, it could not be opened. The trooper then took a tire tool and pried open the trunk lid. Inside, among other personal items, he found a cardboard box with six small packets of marijuana in it. The trial court held that Villines and Miller had standing to contest the search of Cross's car. The State assigns the ruling as error.

■■ The doctrine of standing to invoke the fourth amendment exclusionary rule has evolved to focus on a defendant's substantive fourth amendment rights. *State* v. *Hamzy*, 288 Ark. 561, 564, 709 S.W.2d 397, 398 (1986); *Rakas* v. *Illinois*, 439 U.S. 128, 140 (1978). Accordingly, evidence should be excluded when the court finds that an unlawful search or seizure violated the defendant's own constitutional rights, and his rights are violated if the challenged conduct invaded his legitimate expectation of privacy. *Johnson* v. *State*, 303 Ark. 12, 18, 792 S.W.2d 863, 866 (1990); *Rakas* v. *Illinois*, 439 U.S. 128, 138-40 (1978). In *Rakas, supra*, the Supreme Court made clear that a defendant can have a reasonable expectation of privacy in the area searched, or the object seized, if he can show a possessory interest in them. The Court held that the defendants' fourth amendment claims in that case must fail because they "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." *Rakas*, 439 U.S. at 148. The Court held that the defendants were "mere passengers" in the vehicle searched and that "passengers *qua* passengers" had no reasonable expectation of privacy in the glove compartment, the area under the seats, or the trunk of the vehicle in which they were riding. *Id.* at

148-49.

Pursuant to the holdings of the Supreme Court of the United States in *Rakas, supra,* this court held in *Koonce* v. *State,* 269 Ark. 96, 598 S.W.2d 741 (1980), that the appellant, who had neither a property nor a possessory interest in the vehicle in which he was apprehended or in the weapon seized had no legitimate expectation of privacy in the area under the seat which would entitle him to invoke the exclusionary rule. That defendant was "only a backseat passenger" in the vehicle searched. *Id.* at 98, 598 S.W.2d at 742.

■ Here, the defendants Villines and Miller were more than "passengers *qua* passengers." They had placed their personal belongings in the trunk of the car and, because of the joint agreement to share driving, were to be lawfully in joint possession of the car for an interstate trip. In fact, Villines had driven from Dallas to a point just south of Little Rock, and Miller was driving when the wreck occurred. Both had a sufficient possessory interest to exclude anyone who tried to interfere with the car or their luggage.

■■ If the owner of a vehicle has turned it over to another person for some period of time, that person has standing to challenge a search of the car during the bailment. 4 W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 11.3(e), at 334 (2d ed. 1987). In *United States* v. *Ochs,* 595 F.2d 1247 (2d Cir. 1979), the court held that the appellant had a possessory interest in the searched vehicle because the owner allowed him to use it whenever he wished and he freely availed himself of that privilege. The appellant had permission to use the car and had a key to it. *Id.* at 1253. A person may have a legitimate expectation of privacy in a place or object he does not own. *U.S.* v. *Perez,* 689 F.2d 1336, 1338 (9th Cir. 1982); *U.S.* v. *Reyes,* 595 F.2d 275, 278 (5th Cir. 1979).

In sum, Villines and Miller were lawfully in joint possession of the car and had a reasonable expectation of privacy in its trunk. The trial court correctly ruled that they had a possessory interest in the car sufficient to give them standing to challenge the search of it on fourth amendment grounds.

The State next argues that, even if the defendants did have

standing to contest the search, the trooper had probable cause to conduct a warrantless search of the trunk of the car.

The real issue is whether the trooper had articulable, objective facts, and not just subjective good faith, which would constitute probable cause to believe that the trunk contained marijuana. He did not have such articulable facts.

In *Scisney* v. *State*, 270 Ark. 610, 605 S.W.2d 451 (1980), a case factually similar to the one at bar, we wrote: "Certainly, several marijuana cigarettes found in the passenger compartment of the vehicle do not supply the probable cause required for a search of two sealed suitcases in the locked trunk of the car. . . ." *Id.* at 613, 605 S.W.2d at 453. In yet another similar case, *Burkett* v. *State*, 271 Ark. 150, 607 S.W.2d 399 (1980), we wrote: "A 'roach clip' and part of a marijuana cigarette found in the console ashtray of the vehicle did not supply the probable cause required for a warrantless search of the contents of the locked trunk of the car, nor did they provide the reasonable belief required for a warrantless search pursuant to Rule 12.4 of the Arkansas Rules of Criminal Procedure." *Id.* at 153, 607 S.W.2d at 400. The reasoning behind these holdings is that the presence of cigarette butts or marijuana seeds, without more, is just as consistent, or perhaps more so, with having only that small amount for personal use as it is with having a cache of marijuana; there is simply no articulable fact to indicate a cache is located in the trunk. In *Berry* v. *State*, 263 Ark. 446, 565 S.W.2d 418 (1978), there was more than a single marijuana cigarette butt in plain view of the arresting officer. There was "an open bank bag containing syringes, white powder, and other things which the officers recognized as paraphernalia used in trafficking in drugs." *Id.* at 448, 565 S.W.2d at 419. Similarly, in *Cook* v. *State*, 293 Ark. 103, 732 S.W.2d 462 (1987), the arresting officer saw a small amount of marijuana on the floorboard, but smelled the odor of another prohibited substance, apparently cocaine. In *Milburn* v. *State*, 260 Ark. 553, 542 S.W.2d 490 (1976), the driver staggered and smelled of marijuana, there was a strong and pungent door coming from the car, there was a large amount of money visible in a bank bag, and there was an appearance bond reflecting that the driver had just been released on a charge of possession of a controlled substance. In *Munguia* v. *State*, 22 Ark. App. 187, 737 S.W.2d 658 (1987), the officers saw mari-

juana on the floorboard and then saw that the interior door panel on the passenger side was loose. Although not fully explaining that drug traffickers frequently use car door panels to hide drugs, the court stated that the loose panel, plus the marijuana on the floorboard, would constitute probable cause to believe "that additional marijuana would be found within the door."

In the case at bar, the State argues that the additional factors are supplied by the three defendants being "nervous and jittery" and by Miller's crying and saying he had never done anything like that before. The argument misses the mark.

■ The standard of review on appeal of a trial court ruling on a motion to suppress is now well established: On appeal the appellate court will make an independent determination based on the totality of the circumstances as to whether evidence obtained by means of a warrantless search should be suppressed, and the trial court's finding will not be set aside unless it is clearly erroneous. *Cook* v. *State*, 293 Ark. 103, 732 S.W.2d 462 (1987).

■ Viewing the evidence in the light most favorable to the appellees, as we must do, it is obvious that Cross's crying and stating that he had never before done anything like this could well have meant that he never before had smoked marijuana. Further, being "nervous and jittery" could well have been the result of the accident. We cannot hold that the ruling of the trial court was clearly erroneous.

Affirmed.