STATE of South Dakota, Plaintiff
and Appellee,

v.

Tim A. NEMETI, Defendant
and Appellant.

No. 16979.

Supreme Court of South Dakota.

Considered on Briefs Oct. 26, 1990.

Reassigned May 17, 1991.

Decided June 26, 1991.

David D. Wiest, Asst. Atty. Gen. (Roger A. Tellinghuisen, on brief), Pierre, for plaintiff and appellee.

Michael P. Ortner, Hot Springs, for defendant and appellant.

MILLER, Chief Justice (on reassignment).

Tim A. Nemeti (Nemeti) was convicted of possession of a controlled substance. SDCL 22-42-5. On appeal, the sole issue is whether Nemeti's consent to search his vehicle was voluntary. We hold that it was and therefore affirm.

Highway Patrolman Jim Feltman (Feltman) stopped the car that 31-year-old college student Nemeti was driving because it was traveling sixty miles an hour in a speed zone posted fifty-five miles per hour. After he obtained Nemeti's driver's license, Feltman saw that Nemeti appeared nervous and uneasy. He asked Nemeti if he had been drinking or had any open containers in the car. Nemeti told him that he had not. Although he did not smell alcohol on Nemeti and had no indication of drinking and driving, Feltman asked Nemeti if he could briefly check inside the vehicle for open containers. Feltman testified, and the trial court found, that Nemeti never gave a response other than clutching the steering wheel tightly and looking distraught. Nemeti testified that he told Feltman that he had not done anything wrong and would prefer that he did not search the car.

Feltman continued to feel that Nemeti's behavior was unusual and requested that Nemeti come to the patrol car where Feltman issued a warning ticket. The two visited in a calm fashion. After he admin-

istered an eye dexterity test that Nemeti agreed to, Feltman asked Nemeti why he was afraid of having Feltman look in his car and whether Feltman could now have permission to look in his car. Nemeti asked Feltman for an "off the record" talk. Feltman testified that:

> He [Nemeti] wanted to know why I wanted to look in the vehicle and I told him I was looking for three things basically, alcohol, drugs or weapons, and he asked me why, and I told him that it was very common to have drugs enter our state from Denver. [Nemeti's car had Colorado plates.] There was something about his demeanor that I was unsure about and that is why I wanted to look, and exactly what I was looking for. I was honest with him.

Nemeti then asked Feltman about the various penalties for marijuana and narcotic possession. Feltman explained them and again asked to search the car. According to Feltman, Nemeti opened his palms toward his car and said "Okay." When Feltman asked for a "yes" or "no," Nemeti responded "Yes, you may look." Nemeti testified that he said: "What if I refuse?," and Feltman told him they would then discuss the legal action he could take. Nemeti testified that he was "under the full impression [Feltman] was going to search the car one way or another" and said "Oh hell, go ahead ... yes, yes, search the damn thing."

As Feltman and Nemeti left the patrol car to search Nemeti's car, Feltman received a radio message. Nemeti proceeded to his car and, when Feltman arrived, gave him a small baggie of marijuana and a smoking pipe, saying: "T-here, that's what I've got." Feltman then asked and received permission to search the car. He found cocaine.

Following a suppression hearing the trial court found, in part:

### XIII.

That Trooper Feltman asked [Nemeti] for permission to search his car for no other reason than officiousness.

### XIV.

That at no time was [Nemeti] coerced into giving his consent to a search of his car by Trooper Feltman.

### XV.

That Trooper Feltman did not make a bad faith threat to obtain [Nemeti's] consent nor did the Trooper make any show of force to obtain that consent.

### ISSUE

### WHETHER NEMETI'S CONSENT TO SEARCH HIS AUTOMOBILE WAS VOLUNTARY?

The voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To determine voluntariness, however, there need be *no* knowing and intelligent waiver or advice of a right to refuse consent. *Id.*

State must establish voluntariness by clear and convincing evidence that the search was the result of free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied. *State v. Cody,* 293 N.W.2d 440 (S.D.1980). We look at the totality of the circumstances, endeavoring to determine the " 'nature of a person's subjective understanding.' " *State v. Kissner*, 252 N.W.2d 330, 333 (S.D.1977) (quoting *Schneckloth*, 412 U.S. at 230, 93 S.Ct. at 2049, 36 L.Ed.2d at 860). *See* 3 W. LaFave, *Search and Seizure* [Consent Searches], § 8.1 at 146 (1987).

Because the presence or absence of consent to search is a question of fact, the trial court's resolution of that question will be upheld unless our examination of the evidence, construed in a light most favorable to the trial court's findings, convinces us that the finding was clearly erroneous. *State v. Zachodni*, 466 N.W.2d 624 (S.D.1991).

After reviewing the totality of the circumstances, it becomes apparent that Nemeti gave his consent voluntarily. Nemeti was an older college student. There is no hint or claim of verbal or physical abuse and no promises and threats were made. By his own testimony, Nemeti asked about the consequences of refusal, indicating knowledge of a right to refuse. *Kissner, supra,* at 334 ("We find this particularly revealing.")

Nemeti admits that he made a calculated risk in consenting to the search and then showing Feltman the marijuana in hopes of satisfying the officer. *See Cody, supra* (taking a calculated risk is a free choice).) After this, however, Nemeti was again asked for his consent to search the car and he readily gave it. This search uncovered the cocaine.

Nemeti's basic contention, however, is that "the officer did not have probable cause for a search of the vehicle, ... other than pure officiousness," and therefore was "overstepping the bounds of propriety." While this point clearly troubled the trial court, it noted, however, the standards of social propriety and the law of consent have different standards.

The Supreme Court of Arkansas addressed a similar argument in *McIntosh v. State,* 296 Ark. 167, 753 S.W.2d 273 (1988), where police stopped a rented van for speeding and noticed the driver's extreme nervousness and discrepancy between the odometer and the mileage in the rental agreement. The driver agreed to allow a search of the van:

> The appellants argue that the consent was not valid because it was not based on reasonable suspicion that there was contraband or the presence of criminal evidence. The appellants rely on language in *Garrett v. Goodwin,* 569 F.Supp. 106 (E.D.Ark.1982), and a proposed opinion issued by a federal magistrate to the local district federal court. The *Garrett* case is limited to roadblocks conducted by the Arkansas State Police and for obvious reasons, we would never use a proposed order as precedent. *More importantly, the appellants' ar-gument has never been declared to be the law by the United States Supreme Court. Under existing law, this search was valid. Automobiles have a diminished expectation of privacy. United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). *The initial stop, which is always critical in search cases, was legal-for a speeding violation. See Russell v. State* [295 Ark. 619, 751 S.W.2d 334 (1988)], *supra. The trial judge held the consent to search was valid and voluntarily given.*

In *Schneckloth v. Bustamonte, supra,* the United States Supreme Court observed:

> The circumstances that prompt the initial request to search may develop quickly or be a logical extension of investigative police questioning. The police may seek to investigate further suspicious circumstances or to follow up leads developed in questioning persons at the scene of a crime.

753 S.W.2d at 275 (emphasis added).

The judgment of conviction is affirmed.

WUEST and HENDERSON, JJ., and MORGAN, Retired Justice, concur.

SABERS, J., dissents.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted did not participate.

SABERS, Justice (dissenting).

NEMETI'S CONSENT TO SEARCH HIS AUTOMOBILE WAS NOT VOLUNTARY BECAUSE IT WAS COERCED BY "OFFICIOUSNESS"

Generally, searches of persons and places must be authorized by a warrant based upon probable cause to believe that the search will yield contraband or other evidence of a crime. U.S. Const. amend. IV; S.D.Const. art. VI, § 11; *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *State v. Zachodni,* 466 N.W.2d 624, 627 (S.D.1991). There are recognized exceptions to this rule, *United States v. Ross,* 456 U.S. 798, 824–825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d

572 (1982), including vehicle searches based upon probable cause, *State v. Pfaff,* 456 N.W.2d 558, 561 (S.D.1990); *State v. Peterson,* 407 N.W.2d 221, 223 (S.D.1987), and searches based upon consent. *Schneckloth,* 412 U.S. at 219, 93 S.Ct. at 2043–2044; *Zachodni,* 466 N.W.2d at 628. Where there is voluntary consent to a search neither a warrant nor probable cause is necessary. *Id.*

The state has the burden of proving that consent to a search has been given freely and voluntarily. *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). This burden is not met by showing "a mere submission to a claim of lawful authority." *Id.* Voluntariness must be established by clear and convincing evidence that the search was the result of a free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied. *State v. Cody,* 293 N.W.2d 440, 450 (S.D.1980) (*Cody I*).

The voluntariness of a consent to search is a question of fact to be determined from all of the circumstances. *Schneckloth, supra; State v. Kissner,* 252 N.W.2d 330, 333 (S.D.1977). As such, the trial court's resolution of the question will be upheld unless our examination of the evidence, construed in a light most favorable to the trial court's finding, convinces us that the finding was clearly erroneous. *Zachodni, supra.*

In this case, the trial court found that Patrolman Feltman asked Nemeti for permission to search his car "for no other reason than officiousness," but that Nemeti was not coerced into giving his consent and that Feltman did not make a bad faith threat to obtain Nemeti's consent. It concluded that Nemeti's consent to search his car was given freely and voluntarily.

My review of the evidence convinces me otherwise. Nemeti was properly stopped because he was speeding as he passed a truck. The offense, however, was so common and so minor that Nemeti was neither arrested nor prosecuted; only a warning ticket was issued. At this point Feltman did not return his driver's license to Nemeti who was sitting in the patrol car or tell him he was free to leave. Rather, Feltman continued to detain Nemeti and persistently seek permission to search the car. Feltman had absolutely no facts to substantiate that Nemeti had either drugs or alcohol in the car. He only based this detention and relentless requests to search on a nebulous feeling that there was something about Nemeti's demeanor that he was "unsure" of.

Based upon the totality of these circumstances I am convinced that the trial court, who was clearly troubled by Feltman's actions, was clearly erroneous in finding the consent to search voluntary. Accordingly, the objects seized should be quashed.