STATE of South Dakota, Plaintiff
and Appellee,

v.

Roger H. KREBS (# 17877) and Guy
A. Davis (# 17882), Defendants
and Appellants.

Nos. 17877, 17882.

Supreme Court of South Dakota.

Considered on Briefs March 15, 1993.

Decided Aug. 4, 1993.

Mark Barnett, Atty. Gen., Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Ron J. Volesky, Huron, for defendant and appellant Krebs.

Douglas E. Kludt, Churchill, Manolis, Freeman and Kludt, Huron, for defendant and appellant Davis.

WUEST, Justice.

Defendants Krebs and Davis were tried jointly for third-degree burglary, grand theft and possession of burglary tools with intent to commit burglary. Krebs was convicted on all three charges and Davis was convicted of grand theft and possession of burglary tools with intent to commit burglary. Each was represented by different counsel and each has filed a separate appeal. Since the facts and two of the issues are the same in both cases, we have consolidated the appeals for the purposes of this opinion.

Both Krebs and Davis claim the trial court erred in denying their separate motions to suppress certain evidence and by permitting the introduction of other acts evidence.

Davis claims the evidence was insufficient as a matter of law to support the judgment and therefore the trial court erred by denying his motions for acquittal. He also maintains the trial court erred in denying his motion for severance.

We affirm the trial court on all issues.

## FACTS

On July 26, 1991, Madison Police Department Detective Jim Johnson received information concerning two males who were suspects in several burglaries in the Huron area. As a result of this information, Johnson prepared a bulletin for distribution to law enforcement officers in Madison.[1] All of the law enforcement officers involved in this appeal received copies of the bulletin.

South Dakota Highway Patrol Trooper Roger Wermers (hereinafter Wermers) was on duty in Madison, South Dakota on July 27, 1991, at 12:35 A.M. At the local 7-11, Wermers saw a vehicle which fit the general description of the car and a man who resembled one of the men described in the police bulletin. Another male came out of the 7-11 and entered the car. Wermers followed the car to a residence in Madison where it stopped. Wermers parked behind it. The driver stayed in the vehicle while the passenger went into the residence. As Wermers approached the vehicle, he noticed an object dangling from the rear view mirror. The driver of the car identified himself as Roger Krebs and said his passenger was Guy Davis. Krebs told Wermers that he and Davis would be spending the night at the residence, the home of Davis' cousin. Wermers issued a warning ticket to Krebs because of the handcuffs dangling illegally from the rear view mirror. The passenger returned to the car as Wermers drove away.

Immediately after Wermers pulled away from the residence he made a radio request for assistance from the Madison Police Department because the vehicle and occupants fit the information in the bulletin. Madison Police Officers Rob Haug and Tom Spiering responded and met Wermers a block from the residence. While Wermers was meeting with the officers, Krebs drove away from the residence. Haug and Spiering followed in their police car.

As Haug and Spiering were following the vehicle, they radioed Wermers and asked whether he knew the name of the passenger. Wermers informed Haug and Spiering the passenger was Guy Davis. At about the same time, Wermers noticed Davis' name on the bulletin. With corroboration of the name in the flyer, Haug and Spiering stopped the vehicle which was now traveling east out of Madison on Highway 34. Wermers also went to that location.

1. The police bulletin listed St. Lawrence, Wessington Springs and Artesian as the locations of recent burglaries; all three are central South Dakota towns near Huron. It then noted the descriptions of two suspects who had been seen in the Huron area.

Krebs and Davis were then asked if they would wait so that Sergeant Johnson could talk to them. They agreed to wait and stood behind their car.

Wermers asked Krebs, the owner of the car, if he could look in the car. Krebs asked: "What for?" Wermers responded there was something interesting underneath a pack of cigarettes on the front floor and he wanted to look through the car; he repeated that he wanted to look through the car. Krebs consented to the search provided he could watch. In the glove compartment, Wermers found a plastic baggie with white pills, a vial with black capsules and two rolls of unopened quarters. A map with pencil-marked lines, X's and circles over several central South Dakota towns was found on the passenger's side of the floor. One of the towns circled, Wessington Springs, was where the recently-burglarized Sunset Bar was located.

Davis identified the pills as his and informed the officers the drugs were ephedrine and caffeine—non-controlled substances. The officers believed they were illegal drugs.

After finding the pills, map and quarters, Wermers asked Krebs for permission to search the trunk of the vehicle. Krebs refused. Wermers then talked with Sergeant Johnson and Agent Dan Peterson, who had arrived at the scene. After being informed of what had been found in the interior of the vehicle during the search, Peterson asked Krebs to open the trunk. When Krebs refused to open the trunk, Peterson obtained the key and opened it. In the trunk officers discovered several nylon bags which contained clothing, a Beretta 9mm semiautomatic pistol, large amounts of money, several miniature whiskey bottles and a National Bank of Miller bank bag full of pennies. A crow bar, a tire iron and five screw drivers were also discovered in the trunk. Many of the items found matched articles reported stolen during the burglaries.

Krebs and Davis were then arrested by Sergeant Johnson on burglary-related charges.

ANALYSIS

I. MOTIONS FOR THE SUPPRESSION OF EVIDENCE SEIZED WERE PROPERLY DENIED.

Prior to the trial, both Krebs and Davis moved to suppress certain evidence claiming it was seized from the car as a result of an illegal search and seizure contrary to Article VI, § 11 of the South Dakota Constitution and the Fourth Amendment to the United States Constitution. The trial court denied the motion. We affirm.

A. *The stops of Krebs' vehicle.*

The Fourth Amendment of the United States Constitution is implicated when a vehicle is stopped. The action constitutes a seizure even though the purpose of the stop is limited and the detention is brief. *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). A passenger has standing to challenge the stop of a vehicle because a stop is a seizure of all persons in the vehicle. *United States v. Erwin,* 875 F.2d 268, 270 (10th Cir.1989).

Governmental interest in investigating an officer's reasonable suspicion, based on specific and articulable facts, may outweigh the Fourth Amendment interest of the driver and passengers. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In accord with the Fourth Amendment, a police officer may not stop a vehicle without a reasonable basis for doing so. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The reasonable cause required to make a stop is less than the probable cause required to issue a warrant or make an arrest. *Terry,* 392 U.S. at 25–26, 88 S.Ct. at 1882, 20 L.Ed.2d at 900–909. *State v. Lownes,* 499 N.W.2d 896, 898 (S.D.1993); *State v. Anderson,* 331 N.W.2d 568, 570 (S.D.1983) (citing *Marben v. State, Dep't of Public Safety,* 294 N.W.2d 697, 699 (Minn. 1980)). The United States Supreme Court has articulated the following standard to evaluate the reasonableness of a stop in the absence of probable cause:

[W]hether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

*Terry,* 392 U.S. at 20, 88 S.Ct. at 879, 20 L.Ed.2d at 905. We have previously set forth the standard by which this court will measure the reasonableness of a stop of a vehicle:

[T]he factual basis required to support a stop for a "routine traffic check" is minimal.... All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion[.]"

*Anderson,* 331 N.W.2d at 570 (quoting *People v. Ingle,* 36 N.Y.2d 413, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975)); *Lownes,* 499 N.W.2d at 899.

 The finder of fact is the exclusive judge of the credibility of witnesses. *State v. Lingwall,* 398 N.W.2d 745, 747 (S.D. 1986). A trial court's factual findings resulting from a suppression hearing will be upheld unless clearly erroneous. *State v. Smith,* 477 N.W.2d 27, 31 (S.D.1991); *State v. Pfaff,* 456 N.W.2d 558, 560 (S.D.1990). Whether the facts, when taken together, add up to probable cause, is a different question. *Smith,* 477 N.W.2d at 31. The existence of probable cause is a question of law, fully reviewable de novo by this court. *Id.; State v. Zachodni,* 466 N.W.2d 624, 630 (S.D.1991).

*1. The first stop as it relates to Davis.*

 Davis testified that the Krebs vehicle was driven from the 7–11 and parked at Davis' cousin's home; he stated: "We were going to that address anyway." The record shows the patrol car followed the vehicle from the 7–11 and, after it had stopped, parked behind Krebs' car. Davis testified he got out of the car and went inside the residence. Wermers then approached the vehicle. Davis stated he did not hear any conversation between Krebs and Wermers

and that when he exited the residence, Wermers was pulling away.

Davis was not stopped, questioned, detained or seized in any manner in the first stop of Krebs' vehicle. He exited the car before Wermers approached the car and did not return until he was driving away. Davis has no standing to challenge the first stop of Krebs' vehicle.

*2. The first stop as it relates to Krebs.*

 When Wermers saw Krebs and Davis in the vehicle at the 7–11, Wermers was justified in making a reasonable investigation based upon the police flyer. We have stated: "A police officer, in performing his official work, may properly question persons when the circumstances reasonably indicate that it is necessary to the proper discharge of his duties." *State v. Burkman,* 281 N.W.2d 436, 439 (S.D.1979).

Evidence at trial indicated that Krebs intended to stop at the residence. Wermers did not activate his emergency siren to cause Krebs to stop nor did he use his lights. Additionally, as Wermers approached Krebs' vehicle, he became aware of a violation of the law due to the dangling handcuffs on the rear view mirror. Wermers issued a warning ticket for the violation and Krebs removed the object from the mirror.

Krebs identified himself to Wermers and identified his passenger as Guy Davis. He also provided his vehicle registration and proof of insurance to Wermers. Wermers used his flashlight to peer into the interior of Krebs' vehicle from the outside. That is the extent of the intrusion of the first stop. In light of the information available to Wermers in the bulletin and his subsequent discovery of a violation of SDCL 32–15–6, the initial investigation of Krebs' vehicle was minimally intrusive and was reasonable under the circumstances. The trial court did not err in finding Wermers acted reasonably.

*·3. The second stop of Krebs' vehicle as it relates to Krebs and Davis.*

 In *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604

(1985), a unanimous United States Supreme Court reversed the Sixth Circuit Court of Appeals' determination that a wanted flyer was insufficient to create a reasonable suspicion because the crime was already completed. The Court said: "It is enough to say that, if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Hensley,* 469 U.S. at 229, 105 S.Ct. at 680, 83 L.Ed.2d at 612. The Court went on to hold that a flyer or bulletin based on articulable facts supporting a reasonable suspicion that a person has committed an offense justifies a *Terry* stop. *Hensley,* 469 U.S. at 232, 105 S.Ct. at 682, 83 L.Ed.2d at 614. It is the objective reading of the flyer that determines whether other officers may act in reliance on the information. *Id.,* 469 U.S. at 233, 105 S.Ct. at 682, 83 L.Ed.2d at 615.

In this case, the flyer requested police be on the lookout for a 1977/1978 grey Pontiac LeMans with Rapid City plates, gave general descriptions of two men and reported the second suspect as wearing multicolored barrettes in his ponytail and a distinctive black, quilted welders cap worn backwards. The bulletin stated the two suspects were believed responsible for burglaries in St. Lawrence, Wessington Springs and Artesian. It then reports one of the suspects could be Guy Davis.

Krebs had earlier identified his passenger as Guy Davis. Wermers testified he had read the flyer and that the car and two men he saw at the 7–11 fit the description in the bulletin. He testified he did not make the connection with Davis' name until Officers Spiering and Haug questioned him as to the identity of Krebs' passenger. When Wermers realized Davis was named as a suspect in the bulletin, that corroboration gave added credibility to the bulletin. Additionally, Wermers testified that Krebs had told him they were staying at the residence for the night but drove away five minutes later. The trial court found the suspicious behavior, combined with the corroboration of information in the police flyer, gave rise to reasonable suspicion justifying the stop by Officers Haug and Spiering. We agree with the trial court that law enforcement officers had reasonable suspicion sufficient to justify the stop.

**B.** *The search of Krebs' vehicle.*

1. *Davis had no standing to challenge the search.*

■■■■ "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387, 394 (1978) (quoting *Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208, 214 (1973)). The standard for measuring Davis' claim is whether he possessed a legitimate expectation of privacy in the area searched. *Rakas,* 439 U.S. at 148, 99 S.Ct. at 433, 58 L.Ed.2d at 404; *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Caffrey,* 332 N.W.2d 269, 274 (S.D.1983). Therefore, our threshold question is whether Davis had a legitimate expectation of privacy such that a search could have violated his Fourth Amendment rights. Davis bears the burden of proving he had a legitimate expectation of privacy. *Rawlings v. Kentucky,* 448 U.S. 98, 105, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633, 641 (1980).

The United States Supreme Court has stated:

[T]he fact that they were "legitimately on [the] premises" in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular area of the automobile searched.... We have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes. [citations omitted] But here petitioners' claim is one which would fail even in an analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which

they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy.

*Rakas,* 439 U.S. at 148–49, 99 S.Ct. at 433, 58 L.Ed.2d at 404.

█ The Eighth Circuit Court of Appeals has applied the factors set forth by the First Circuit Court of Appeals to determine whether there is a legitimate expectation of privacy:

At least the following factors are relevant to a privacy expectation: legitimate presence in the area searched, possession or ownership of the area searched or the property seized, prior use of the area searched or the property seized, ability to control or exclude others' use of the property, and a subjective expectation of privacy.

*United States v. Lochan,* 674 F.2d 960, 965 (1st Cir.1982); *United States v. Carter,* 854 F.2d 1102, 1105 (8th Cir.1988). The factors are viewed under the totality of the circumstances. *United States v. Aguirre,* 839 F.2d 854, 856–57 (1st Cir.1989).

█ Ownership of the property seized is not determinative of a legitimate expectation of privacy; it is but one factor to be considered. *Rawlings,* 448 U.S. at 105, 100 S.Ct. at 2562, 65 L.Ed.2d at 642. "*Rakas* emphatically rejected the notion that 'arcane' concepts of property law ought to control the ability to claim the protections of the Fourth Amendment." *Id.*

█ Here, the trial court found that Davis had failed to meet his burden of proving a legitimate expectation of privacy. The record indicates the car did not belong to Davis, Davis was not driving the vehicle, did not control the keys or registration—in short, he did not own or possess the automobile. The record does not show Davis established any prior use of the area. Nor does the record indicate he established any ability to control or exclude others from the area searched or property seized. The trial court found there was no mark or label to identify either the baggie or vial of pills seized from the glove box or the blue bag seized from the trunk as the property of Davis.

The trial court determined Davis had not carried his burden of establishing a legitimate expectation of privacy. Under the totality of the circumstances, we do not find the trial court's holding to be clearly erroneous.

### 2. *Krebs consented to the search of the interior of his car.*

█ For consent to a search to be valid, the totality of the circumstances must indicate that it was voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854, 875 (1973); *State v. Woods,* 374 N.W.2d 92, 100 (S.D.1985). The presence or absence of consent to search is a question of fact. *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. at 2059, 36 L.Ed.2d at 875; *State v. Nemeti,* 472 N.W.2d 477, 478 (S.D. 1991); *Zachodni,* 466 N.W.2d at 628. The state bears the burden of demonstrating consent. *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. at 2059, 36 L.Ed.2d at 875; *Woods,* 374 N.W.2d at 100.

Our standard of review concerning consent to search is as follows:

Because the presence or absence of consent to search is a question of fact, the trial court's resolution of that question will be upheld unless our examination of the evidence, construed in a light most favorable to the trial court's findings, convinces us that the finding was clearly erroneous.

*Nemeti,* 472 N.W.2d at 478.

█ Krebs' testimony indicates he left his automobile voluntarily; he was not coerced to leave the vehicle. There is no indication that Krebs was verbally threatened in order to obtain his consent to the search. Nor is there any evidence Krebs was physically threatened or given any promises in return for his consent to the search. The only physical contact the record indicates was an officer restraining Krebs' arm when he made an aggressive movement toward Wermers.

Krebs claims he consented to a search but then limited Wermers' search to the cigarette package and lighter. Wermers testified Krebs agreed to the search as long as Krebs could watch. Wermers agreed that Krebs could watch him as long as Krebs did not stand near his right side, within reach of his weapon. The trial court, which is the exclusive judge of the credibility of the witness, found the only condition Krebs put on his consent to search was that he wished to watch the procedure. The United States Supreme Court has recently stated that the scope of a search pursuant to consent is circumscribed by the officer's reasonable belief as to the extent of consent. *United States v. Jimeno,* 500 U.S. ——, ——, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297, 302 (1991). We agree. Where Wermers believed Krebs consented to a search contingent only upon being allowed to watch, and the trial court so found, a review of the record, examined in the light most favorable to the trial court's findings, does not reveal the trial court's findings were clearly erroneous.

3. *Probable cause existed to search the trunk of Krebs' car under the automobile exception to the warrant requirement.*

One of the recognized exceptions to the Fourth Amendment's requirement of a search warrant is the automobile exception. We have discussed the exception in the following manner:

> Based on increased mobility and decreased privacy expectations in a vehicle, both the United States and the South Dakota Supreme Courts have held that:
>
> > [W]hen a law enforcement officer stops a vehicle, and the officer has probable cause to believe the vehicle contains contraband, the vehicle may be searched without a warrant. The search may include the interior of the car, as well as the trunk.
>
> Under the vehicle exception, the Constitution permits a search to proceed without a warrant, but not without probable cause.

*Zachodni,* 466 N.W.2d at 627 (citations omitted).

We have described the probable cause required for a search as follows:

> Probable cause justifying a search is present where the facts found by the court or the magistrate would lead a reasonable and prudent person to believe its fairly probable that a crime had been committed and that evidence relevant to the crime would be uncovered by the search. Although the evidence supporting the probable cause determination must be "more than a bare suspicion," it need not establish proof beyond a reasonable doubt or even proof by preponderance. Furthermore, each element of evidence need not be individually assessed for veracity and basis of knowledge. Rather, the probable cause determination is a function of "the totality of relevant circumstances."

*Zachodni,* 466 N.W.2d at 629 (citations omitted).

Krebs did not consent to the search of the trunk. The trial court found the search of the trunk was based upon the pills and rolls of quarters found in the glove compartment, the pencil-marked map, the black quilted welder's cap which matched the description in the flyer and the fact that Krebs and Davis left the residence a few minutes after Krebs told Wermers they would be staying for the night. The trial court determined the facts established probable cause. Once probable cause existed to search the vehicle, it extended to anywhere in the vehicle the objects of the search might reasonably be found. *Zachodni,* 466 N.W.2d at 631.

While factual findings are reviewed by this court under the clearly erroneous standard, the question of whether the facts add up to probable cause is a question of law, fully reviewable de novo. *Zachodni,* 466 N.W.2d at 629–30. Confirmation of information contained in the flyer, combined with the evidence uncovered in the search of the interior of the car, provided far more than a "bare suspicion" that Krebs and Davis were involved in the

burglaries. Clearly, the police had probable cause to search the trunk.

## II. THE TRIAL COURT DID NOT ERR IN ALLOWING THE STATE TO INTRODUCE OTHER BAD ACTS EVIDENCE.

Other bad acts evidence may be admissible pursuant to SDCL 19-12-5:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The trial court's decision to admit other acts evidence will not be overruled absent an abuse of discretion. *State v. Werner*, 482 N.W.2d 286, 288 (S.D.1992). The trial court must make a two-step determination when ruling on the admissability of other acts evidence:

(1) Whether the intended purpose for offering the other acts evidence is relevant to some material issue in the case, and

(2) Whether the probative value of the evidence is substantially outweighed by its prejudicial effect.

*Id.*, (quoting *State v. Basker*, 468 N.W.2d 413, 415 (S.D.1991)). Additionally, the trial court should identify the exception under which the bad acts evidence is admitted. *Werner*, 482 N.W.2d at 289. We have held that an element of a crime may be established through the use of other acts testimony. *Id.* at 290 (citing *United States v. Estabrook*, 774 F.2d 284, 289 (8th Cir. 1985)).

Krebs and Davis claim the other acts evidence admitted was "at best merely coincidental" and not sufficiently connected to the crime charged to have relevancy. The crime with which they were charged involved a burglary and theft at the Sunset Bar in Wessington, South Dakota. In the burglary, entry was gained through a pried-open back door, the video lottery machines were unplugged and pried open, the money in the lottery machines was stolen and cash and cigarettes were also taken.

The State sought to introduce other acts evidence concerning a similar burglary at the Sportsman's Bar in St. Lawrence, South Dakota. In that burglary, forced entry was gained through the rear door during the early morning hours, the video lottery machines in the bar were unplugged and pried open, money was stolen from the video lottery machines, money was stolen from a "shake-a-day" jar, and a National Bank of Miller bank bag full of pennies was stolen. A National Bank of Miller bank bag full of pennies was found in the trunk of the vehicle in which Krebs and Davis were arrested.

The State also sought admission of evidence concerning a burglary and theft at the Longbranch bar in Artesian, South Dakota where forced entry was gained through the window during the early morning hours, the video lottery machines were pried open and the money removed. A shoe print with a BK mark was found on a piece of particle board broken off one of the video lottery machines. At trial, an expert identified the left shoe of a pair of British Knight brand shoes as the shoe which made the print on the particle board.[2] Additionally, five miniature Jack Daniels Whiskey bottles and one miniature Lord Calvert bottle were stolen in the burglary. Five miniature Jack Daniels bottles and one miniature Lord Calvert liquor bottle were found in the trunk of the car in which Krebs and Davis were arrested.

The State also sought to present evidence concerning a similar burglary at the Centennial Cafe in Harrold, South Dakota. During the early morning hours, forced entry was gained through one of the doors into the lounge, the video lottery machines

2. The two pairs of shoes which Krebs and Davis were wearing at the time of arrest were sent to the South Dakota State Crime Lab for testing. As one pair was identified as making the print found at the Artesian burglary and one pair was identified as making the print found at the Harrold burglary, the trial court admitted the evidence against both men.

were pried open, money was stolen from the machines, money was stolen from a "shake-a-day jar" and tool marks were found on the door through which the forced entry was made. A shoe print was found on a metal reflector broken off one of the video lottery machines. An expert identified the right shoe of a pair which was confiscated from either Krebs or Davis as the shoe which made the print on the metal reflector. Additionally, the expert testified that tool marks found on a door from the burglary at the Centennial Cafe were made by the crowbar found in the trunk of the vehicle.

The trial court did the required two-step balancing on the record. The court determined the evidence sought to be presented was relevant as it "had a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Additionally, the court determined the evidence was relevant to prove plan and identity. The trial court found that by pleading not guilty, Krebs and Davis had put identity into question and therefore circumstantial evidence which tended to link them with the crimes was relevant. Additionally, the court found the circumstantial evidence tended to show a sequential relationship between the offenses.

We have previously stated:

Two of the principal factors bearing upon the admissibility of evidence of other crimes are a sequential relationship between the offenses and the modis operandi employed. Where the incidents are close in time and similar in modis operandi, evidence of other crimes is frequently admissible on, among other things, the question of defendant's identity.

*State v. Johnson,* 316 N.W.2d 652, 655 (S.D.1982) (citations omitted).

The record clearly supports the trial court's decision to admit the other acts evidence. The court did the required balancing carefully as evidenced by the fact that it refused to admit some evidence of prior acts. The court denied the State's motion to introduce the 9mm Beretta pistol found in the trunk of the car as it was "at best, the product of a different burglary" and was not shown to have been used in the commission of any of the burglaries.

We hold the trial court did not abuse its discretion in admitting the other acts evidence.

### III. THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE GUILTY VERDICT OF DAVIS.

Davis made motions for judgments of acquittal at the conclusion of the State's case, following his case, and as a post trial motion for judgment of acquittal notwithstanding the verdict. Davis claims that the evidence is insufficient as a matter of law to support the judgment. The trial court denied his motions.

"In considering a motion for acquittal the trial court must consider the evidence in the light most favorable to the nonmoving party and must give the nonmoving party the benefit of all reasonable inferences in his favor." *State v. Bonrud,* 393 N.W.2d 785, 789 (S.D.1986). On appeal, we accept the evidence and the most favorable inferences that the jury might have fairly drawn from the evidence to support the verdict. *State v. Haase,* 446 N.W.2d 62, 65–66 (S.D.1989).

Davis was convicted by circumstantial evidence. We have stated:

"The established rule in this state is that to warrant conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and with guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent." This rule does not mean the evidence must be such as to exclude every possible hypothesis of innocence. Rather, it requires only the exclusion of the reasonable hypothesis of innocence.

*State v. Esslinger,* 357 N.W.2d 525, 530–31 (S.D.1984) (citations omitted).

At trial, the State presented expert testimony that tool marks found on a door

from the burglary at the Centennial Cafe in Harrold, South Dakota were made by the crowbar found in the trunk of the vehicle in which Krebs and Davis were riding the night they were arrested. Additionally, expert testimony was presented that the shoe prints found at the Longbranch Bar in Artesian, South Dakota and the Centennial Cafe in Harrold, South Dakota were made by shoes worn by Krebs and Davis when they were arrested. The State introduced as evidence the miniature bottles of liquor and the Miller Bank bag full of pennies recovered from Krebs' vehicle.

The trial court found the evidence introduced, if reasonably believed by a jury was sufficient to find Davis guilty of the crime charged. The trial court's decision to deny Davis' motion for judgment of acquittal was proper.

## IV. THE TRIAL COURT DID NOT ERR IN DENYING DAVIS' MOTION FOR SEVERANCE.

Davis asked the trial court for an order severing his trial from that of co-defendant Roger Krebs. The motion was denied. Davis now claims trying the defendants together deprived him of a fair trial. Neither Krebs nor Davis testified at trial. The only witness for the defense was a forensic expert, Dr. Kenneth A. Siegesmund, who testified on behalf of both Krebs and Davis.

We have stated our standard of review in severance questions as follows:

> Severance will be allowed upon a showing of a real prejudice to a defendant.... The motion to sever is addressed to the sound discretion of the trial court, and a denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown. Where each convicted defendant is shown to have participated in a common criminal act, more must be shown than that a severance might have afforded an increased chance of acquittal. A defendant must demonstrate affirmatively that the joint trial prejudiced the possibility of a fair trial.

*State v. Honomichl*, 410 N.W.2d 544, 545–46 (S.D.1987) (citations omitted) (4–1 decision with Henderson, J., dissenting); *State v. Andrews*, 393 N.W.2d 76, 78–79 (S.D. 1986); *State v. No Heart*, 353 N.W.2d 43, 47 (S.D.1984).

Davis presented no evidence at the time the trial court ruled on the motion for severance that his defense and the defense of Krebs conflicted to the point of being irreconcilable or mutually exclusive. Nor does Davis point to anything in the record presented to this court on appeal that indicates the defenses were irreconcilable or mutually exclusive. The trial court's denial of Davis' motion for severance was proper.

We have considered Davis' claim that the trial court erred in denying his motion for a new trial based on inconsistent verdicts. We find this issue is controlled by settled law and is totally lacking in merit.

We affirm.

MILLER, C.J., and HENDERSON and AMUNDSON, JJ., concur.

SABERS, J., concurs in part and concurs in result in part.

SABERS, Justice (concurring in part and concurring in result in part).

I concur on Issue III, sufficiency of the evidence, and Issue IV, severance. I disagree with the majority's language or treatment of all other issues and concur in result only.

1. Both Krebs (the owner) and Davis (his companion and passenger) had a legitimate expectation of privacy in the interior, glove compartment and trunk of the automobile. Therefore, both have standing to challenge illegal searches and seizures of same. *See generally* 4 Wayne R. LaFave, Search and Seizure §§ 11.3(c) & 11.3(e) (2d ed. 1987) (Court's analysis in *Rawlings* generally unsound and is an ill-considered application of the *Mancusi–Rakas* expectation-of-privacy rule).

> In *Rakas*, [ ] the Supreme Court made clear that a defendant can have a reasonable expectation of privacy in the area searched, or the object seized, if he can

show a possessory interest in them. The Court held that the defendants' fourth amendment claims in that case must fail because they "asserted neither a property nor a possessory interest in the automobile, not an interest in the property seized." *Rakas*, 439 U.S. at 148, 99 S.Ct. at 433. The Court held that the defendants were "mere passengers" in the vehicle searched and that "passengers *qua* passengers" had no reasonable expectation of privacy in the glove compartment, the area under the seats, or the trunk of the vehicle in which they were riding. *Id.* at 148–49, 99 S.Ct. at 433. *State v. Villines*, 304 Ark. 128, 801 S.W.2d 29, 30 (1990).

Unlike *Rakas*, Davis was more than a "passenger *qua* passenger." Krebs and Davis had traveled across the State in this car. Davis surely had personal belongings in the interior and trunk as he had been living out of this car during the course of their intrastate travels. The fact that he kept his asthma medication in the glove compartment is certainly an indication of the fact that this car was, for the most part, his temporary home. Clearly, Davis was more than a "mere passenger" * and had a reasonable expectation of privacy in the interior of the car, the glove compartment, and the trunk. *See Villines*, 801 S.W.2d at 30–31. *See also* 4 Wayne R. LaFave, Search and Seizure § 11.3(e) (2d ed. 1987).

The Supreme Court's decision in *Rakas v. Illinois*, rejecting the notion that a passenger gains standing to object to search of a car merely by his lawful presence and adopting instead a narrower expectation-of-privacy test, does not conflict with the notion that, at least in some circumstances, a person may have standing by virtue of the fact that *his* personal property is in the car. The Court in *Rakas* emphasized that in that case the defendants asserted no "interest in the property seized," and that the deci-

sion was not to be read as saying "that such visitors could not contest the lawfulness of the seizure of evidence or the search if their own property were seized during the search."

*Id.*

2. The second question is whether the officers had Kreb's consent to search the interior and glove compartment of the automobile. Under these circumstances, this question turns on whether the trial court believed the testimony of the officers over that of the defendants. It did, and we are bound by that finding of fact. "Quite simply, this issue comes down to the trial court's judging credibility. It was in the position to observe the witness testifying, and we give due regard to its superior position to judge credibility." *State v. Zachodni*, 466 N.W.2d 624, 628 (S.D.1991) (citation omitted). *See also Nemeti*, 472 N.W.2d at 480 (Sabers, J., dissenting). Therefore, there was consent.

3. Since there was no consent to search the trunk, the third question is whether there was probable cause, at that point, to search the trunk. In arguing that "probable cause existed" "within the automobile exception to the warrant requirement," the State's brief claims that:

> Davis and Krebs could not have been held until a search warrant for the trunk was obtained. If that process could have been used, a search warrant would have been obtained for the trunk.

These statements by the State appear to allege that, at the time the police searched the trunk, they did not have probable cause to arrest Davis and Krebs.

In *Beck v. Ohio* [379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)], the Supreme Court declared that police have probable cause to effect an arrest when:

> ... the facts and circumstances within their knowledge and of which they [have] reasonable trustworthy infor-

---

* LaFave defines persons who are "merely passengers" as persons *not* asserting either a property or possessory interest in the vehicle, nor an interest in the property seized. "[C]ertain passengers are not 'merely passengers' in the sense

in which that phrase was used in *Rakas*, so that they *do* have a justified expectation of privacy at least as to certain areas in the vehicle." 4 Wayne R. LaFave, Search and Seizure § 11.3(e) (2d ed. 1987 & Supp.1993).

mation [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.

Charles H. Whitebread and Christopher Slobogin, Criminal Procedure § 3.03 (2d ed. 1986). Clearly, based upon the findings that the trial court made, not only did the police have probable cause to search the trunk, they also had "facts and circumstances within their knowledge" sufficient to establish probable cause to arrest Davis and Krebs.

4. Finally, I concur in the holding of Issue II, other bad acts evidence, and simply submit that we have now properly overruled this court's prior holding in *State v. Itzen*, 445 N.W.2d 666 (S.D.1989). As I stated therein, "[t]he evidence of the other incidents [was] admissible because [it] tend[s] to prove that defendant committed the third incident." *Id.* at 670 (Sabers, J., dissenting). The same reasoning would apply here under the plan or modus operandi exception where identity is in issue.